AUSAs: Michael DiBattista, Maggie Lynaugh

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

26 MAG 4880

UNITED STATES OF AMERICA

v.

PHILLIP PATRICK WILLIAMS and
DEVIN ALLEN JOHNSON,

Defendants.

**SEALED COMPLAINT**

Violations of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Sections 2, 371, and 1349.

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

ROBERT FANESI, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

1. From at least in or about July 2022 up to and including the present, in the Southern District of New York and elsewhere, PHILLIP PATRICK WILLIAMS and DEVIN ALLEN JOHNSON, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2. It was a part and an object of the conspiracy that PHILLIP PATRICK WILLIAMS and DEVIN ALLEN JOHNSON, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, WILLIAMS and JOHNSON agreed together to engage in a scheme to defraud investors in funds associated with Backward Hat Capital and to obtain money and property from those investors, which would and did involve wire transfers to and from financial institutions in the Southern District of New York and elsewhere.

(Title 18, United States Code, Section 1349.)

**COUNT TWO**
**(Conspiracy to Commit Securities Fraud)**

3. From at least in or about July 2022 up to and including the present, in the Southern District of New York and elsewhere, PHILLIP PATRICK WILLIAMS and DEVIN ALLEN

JOHNSON, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

4. It was a part and an object of the conspiracy that PHILLIP PATRICK WILLIAMS and DEVIN ALLEN JOHNSON, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of a means and an instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, would and did use and employ, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operates and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, to wit, WILLIAMS and JOHNSON agreed to engage in a scheme to defraud investors in funds associated with Backward Hat Capital, by providing false and misleading information to those investors regarding how their funds would be used, the returns earned on those funds, and the independence of purported audits conducted on Backward Hat Capital and its subsidiaries and affiliates.

5. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. From at least in or about October 2023 up to and including the present, PHILLIP PATRICK WILLIAMS, the defendant, caused fraudulent rates of return to be reported to investors, including investors in the Southern District of New York, for investments in funds associated with Backward Hat Capital.

b. From at least in or about 2023 up to and including the present, WILLIAMS and DEVIN ALLEN JOHNSON, the defendants, misrepresented and caused others to misrepresent to investors and prospective investors the independence of an auditor who purportedly conducted an independent audit of Backward Hat Capital and its related entities.

c. From at least in or about July 2022 up to and including the present, WILLIAMS transferred and caused to be transferred over $130 million in investor funds from Backward Hat Capital bank and cryptocurrency accounts to accounts under WILLIAMS's control.

(Title 18, United States Code, Section 371.)

**COUNT THREE**

**(Securities Fraud)**

6. From at least in or about July 2022 up to and including the present, in the Southern District of New York and elsewhere, PHILLIP PATRICK WILLIAMS and DEVIN ALLEN JOHNSON, the defendants, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, WILLIAMS and JOHNSON engaged in a scheme to defraud, by making false and misleading statements to investors in funds associated with Backward Hat Capital about how their funds would be used, the returns earned on those funds, and the independence of purported audits conducted on Backward Hat Capital and its subsidiaries and affiliates.

(Title 15, United States Code, Sections 78j(b), 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7. I have been a Special Agent with HSI for approximately five years. During my tenure with HSI, I have participated in the investigation of numerous sophisticated frauds, including wire and securities frauds. Through my training, education, and experience, I have become familiar with the manner in which complex frauds are perpetrated.

8. The information contained in this affidavit is based upon my personal knowledge, as well as information obtained during this investigation, directly and indirectly, from other sources, including my review of financial records, my interviews of witnesses, and from speaking with representatives of the United States Securities and Exchange Commission ("SEC") and the Commodity Futures Trading Commission ("CFTC"). Because this affidavit is being submitted for a limited purpose, I have not set forth each and every fact I have learned in connection with this investigation. Where conversations and events are referred to herein, they are related in substance and in part unless otherwise noted. Where dates, figures, and calculations are set forth herein, they are approximate.

**Overview**

9. PHILLIP PATRICK WILLIAMS and DEVIN ALLEN JOHNSON, the defendants, were among the founders of Backward Hat Capital (collectively, with its related entities, "Backward Hat"), an investment firm that operated and managed a series of investment funds. Backward Hat purportedly earned returns for investors by engaging in foreign exchange ("forex") trading. Since its founding in or about July 2022, Backward Hat solicited and accepted more than $600 million in capital contributions from over 2,000 investors. In connection with those

solicitations, and on an ongoing basis, Backward Hat provided investors with offering materials representing that investor funds would be invested pursuant to Backward Hat's investment strategy and purported audit reports attesting to Backward Hat's financial soundness. Backward Hat also purported to track and report investor performance through regular account statements issued to investors via an online portal that claimed to reflect the returns investors had earned on their investments. Backward Hat's reported rate of return, as reflected in those statements, typically exceeded 6% per month, resulting in an annual compounded gross return of more than 100%, such that an investor would more than double their money in a year.

10. Those outsized purported returns and Backward Hat's purported forex investment strategy, however, were largely illusory, and were based on material misrepresentations to investors. Instead of engaging in forex trading, Backward Hat used more than $200 million of incoming investor funds to pay redemptions by existing investors in a Ponzi scheme-like fashion, and transferred hundreds of millions of dollars to Backward Hat's insiders, including more than $130 million to PHILLIP PATRICK WILLIAMS, the defendant, and more than $40 million to DEVIN ALLEN JOHNSON, the defendant.

Backward Hat's Representations to Investors

11. Based on my review of Backward Hat's formation documents and filings made by Backward Hat with the SEC, I know that Backward Hat was co-founded by PHILLIP PATRICK WILLIAMS and DEVIN ALLEN JOHNSON, the defendants, and a third individual ("Co-Founder-3"), in or about 2022, and that each of the co-founders had an equal ownership interest in Backward Hat through corporate entities they each controlled. WILLIAMS and JOHNSON were listed as executive officers and directors of Backward Hat on various documents filed with the SEC.

12. Based on my review of internal records maintained by Backward Hat, including records of investments into Backward Hat, I have learned that Backward Hat maintained more than twelve separate funds into which it placed investor money.

13. Based on my review of marketing and offering materials associated with Backward Hat, I know that Backward Hat marketed its funds as investing primarily in a forex arbitrage strategy. For example, according to a Backward Hat marketing deck from in or about late 2023 (the "2023 Marketing Deck"), Backward Hat "[s]tarted out of the desire to help friends and family navigate the complexities of the Forex arena" and has grown "at a staggering rate." The Backward Hat website similarly described Backward Hat's funds as focusing on "forex pair arbitrage utilizing [its] proprietary automation and algorithms to generate returns" as well as other arbitrage opportunities. The Backward Hat offering documents similarly represented that investor funds would be invested through forex trading. For example, a private placement memorandum for one of Backward Hat's funds stated that Backward Hat "focuses on trading Forex pairs utilizing [their] proprietary automation and algorithms to generate returns," while the limited partnership agreement for another fund stated that its purpose was "to receive a return on investment (profits) generated from income earned through the General Partner's activities in connection with foreign exchange trading."

14. Based on my review of Backward Hat documents, I know that Backward Hat hired a supposed audit firm (the "Auditor") to create an "Independent Financial Audit" and "Quality of

Earnings" reports for Backward Hat covering fiscal years 2023, 2024, and 2025. Those documents set forth the following statements.

a. The audit report described PHILLIP PATRICK WILLIAMS, the defendant, as the "Managing Partner/CEO" and DEVIN ALLEN JOHNSON, the defendant, as the "Managing Director, Algorithmic Strategy" of Backward Hat.

b. The audit report and accompanying financial statements highlighted an average gross return of 6.3% from 2023 through mid-2025 and concluded that the fund "exhibits strong financial integrity, sound governance, and consistent performance across all audited periods."

c. An "Independent Auditor's Opinion Letter" accompanying the "Independent Financial Audit 2023-2025" report stated that the Auditor audited the financial statements of a particular Backward Hat fund and concluded that "the financial statements present fairly, in all material respects, the financial position of [the fund] as of the above dates, and the results of its operations and cash flows for the periods then ended, in conformity with U.S. Generally Accepted Accounting Principles (GAAP) and International Financial Reporting Standards (IFRS) equivalency as applicable to investment partnerships."

d. The "Independent Financial Audit" repeatedly described the audit and the Auditor as "independent."

15. Based on my review of certain emails sent by DEVIN ALLEN JOHNSON, the defendant, I know that JOHNSON has sent the "Independent Financial Audit" and "Quality of Earnings Reports" to prospective investors. In particular, on or about November 14, 2025, JOHNSON sent the materials to a prospective investor who later invested in Backward Hat.

16. Based on my review of internal spreadsheets maintained by Backward Hat to track monthly investor returns, I know that all of the funds operated by Backward Hat purportedly earned the same percentage return each month, except for one more "aggressive" fund, which earned a higher rate of return. According to these Backward Hat records, from in or around January 2026 through in or around August 2026, the monthly rate of return for the non-aggressive funds never fell below 6% while the rate of return for the aggressive fund never fell below 9.5%.

17. Based on interviews I and other law enforcement officers have participated in of individuals who have invested in Backward Hat, I know that Backward Hat posted investor monthly returns on the capital they invested in Backward Hat to an investor-facing dashboard (the "Dashboard"). Based on my review of the Dashboard, I know that between in or around October 2023 and in or around September 2026, Backward Hat represented its monthly return rates to be between 6.01% and 7.21%.

18. Based on my review of certain electronic messages sent by PHILLIP PATRICK WILLIAMS, the defendant, to a Backward Hat employee, I know that each month, WILLIAMS set the return rate to use to calculate the value of each investor's investment into Backward Hat. For example, on or about August 5, 2026, an employee at Backward Hat texted WILLIAMS a list of Backward Hat's historical rates of return along with the statement: "For returns tomorrow. Let me know if you need anything else." WILLIAMS responded with "6.62," which, based on my

review of Backward Hat's internal spreadsheets, I believe to mean 6.62%, which was the rate of return used by Backward Hat for its non-aggressive funds for July 2026. Similarly, on or about May 14, 2026, the following exchange occurred between WILLIAMS and a Backward Hat employee:

| | |
|---|---|
| Backward Hat Employee: | Aggressive fund 10.01%<br>Does this sound right? |
| WILLIAMS: | What was it last month?<br>Also what were the payout |
| Backward Hat Employee: | 9.51% last month. . . |
| | . . . |
| WILLIAMS: | . . . Let's do 9.91 bumped it up a bit |

Bank Records Reveal Backward Hat Was Not Using Investor Funds as Represented and Was Fabricating Return Rates

19. Based on my review of internal spreadsheets maintained by Backward Hat documenting investments received and redeemed, as well as bank and cryptocurrency exchange records, I know that investor funds were not used in the manner Backward Hat represented. In particular, I have learned the following, among other things:

a. Since 2022, more than 2,000 investors contributed over $600 million to Backward Hat.

b. Of that money, at least approximately $200 million was used to make payments back to investors in a Ponzi scheme-like fashion, whereby payments to existing investors were funded with incoming investments from new investors rather than legitimate investment profits.

c. More than approximately $200 million was used to make payments to Backward Hat's founders and general partners ("GPs")—that is, individuals enlisted by Backward Hat to raise funds from additional investors. Those payments included more than $130 million to accounts under the control of PHILLIP PATRICK WILLIAMS, the defendant, and more than $40 million to accounts under the control of DEVIN ALLEN JOHNSON, the defendant.

d. Only minimal funds appear to have been potentially used for forex trading.

20. In addition, based on my review of text messages exchanged between DEVIN ALLEN JOHNSON, the defendant, and an employee of Backward Hat, I have learned that on or about February 12, 2026, the employee learned that JOHNSON had transferred approximately $300,000 from a Backward Hat bank account to JOHNSON's personal bank account. After being confronted about the transfer by the employee, JOHNSON returned the money to the Backward Hat bank account.

Email Records Reveal the Purported Auditor Was Not Independent

21. Based on my review of publicly available documents and certain emails between DEVIN ALLEN JOHNSON, the defendant, and the CEO of the Auditor, as well as interviews I and other law enforcement officers have conducted of individuals who know JOHNSON and PHILLIP PATRICK WILLIAMS, the defendant, I have learned that the purported audit reports Backward Hat sent to investors were not independent. In particular, I have learned the following, among other things:

a. PHILLIP PATRICK WILLIAMS, the defendant, co-founded a company with the CEO of the Auditor.

b. On or about May 29, 2026, the CEO of the Auditor emailed JOHNSON to "address the significant amount of work, value creation, introductions, and commitments that remain unresolved from the past several years." In that email, the CEO of the Auditor made clear that he had personal interests in Backward Hat that were not disclosed to investors, who were told that the Auditor's work was "independent" of Backward Hat. In particular, the CEO of the Auditor stated the following, among other things:

i. "As you are aware, both personally and through [the Auditor], I have performed extensive services for you, BH Capital," other companies owned by JOHNSON, "numerous [GPs] within the BH Capital ecosystem, portfolio companies, investors, and strategic relationships that entered the ecosystem following direct discussions, introductions, and efforts on my part. This support began before the inception of BH Capital, continued throughout the initial formation years of the fund, and remains ongoing today. The work has included strategic advisory services, investor introductions, GP introductions, enterprise relationship development, operational support, business development, exposure opportunities, market expansion support, and executive-level guidance."

ii. During that time, Backward Hat had made "numerous commitments" to the CEO of the Auditor regarding "compensation, participation, allocations, economics, and long-term alignment."

iii. Although the commitments had "not yet materialized," the CEO of the Auditor believed that "had the commitments made over the past several years been honored as represented," he would have "accumulated no less than $2,000,000 within [his] personal BH Capital account."

JOHNSON Expanded the Scheme with AI Capital

22. Since at least in or around August 2025, DEVIN ALLEN JOHNSON, the defendant, with the knowledge of PHILLIP PATRICK WILLIAMS, the defendant, attempted to expand the Backward Hat scheme through the creation of a related fund, AI Capital LP ("AI Capital"), which was affiliated with Backward Hat.

23. In particular, based on conversations I and other law enforcement officers have had with an individual who performed marketing and operations work for AI Capital ("AI Capital Employee-1"), I have learned the following, among other things:

a. Beginning in or around the summer of 2025, DEVIN ALLEN JOHNSON, the defendant, began efforts to raise money for a fund he created called AI Capital. AI Capital purportedly used Backward Hat's supposed forex trading algorithm as its investment strategy.

b. In marketing materials created in connection with AI Capital, PHILLIP PATRICK WILLIAMS, the defendant, was listed as "Investment Manager and Strategic Advisor."

c. To market AI Capital, JOHNSON used Backward Hat's supposed trading history to demonstrate to prospective investors the magnitude of returns they could achieve by investing in AI Capital. For instance, a data room created to market AI Capital contained an Excel spreadsheet called "Trades – BH (2025.09.04)," which purported to be an "Export of executed trades from BH Capital, the fund that supports AI Capital," and purported to show profitable forex trading in one of the Backward Hat funds between on or about July 16, 2024, and on or about August 4, 2024.

d. In a presentation to a prospective AI Capital investor, JOHNSON falsely represented that AI Capital had obtained $75 million in funding when, in fact, it had not received any investor money.

<u>Backward Hat Failed to Meet Withdrawal Requests</u>

24. In or around the summer of 2026, the Backward Hat Ponzi scheme began to fall apart. In particular, based on interviews I and other law enforcement officers have participated in of Backward Hat investors, as well as my review of certain correspondence sent by Backward Hat to investors, I have learned that beginning in the summer of 2026, Backward Hat had difficulty meeting investor withdrawal requests.

25. Based on my review of email and text messages concerning Backward Hat, I know that PHILLIP PATRICK WILLIAMS, the defendant, attempted to explain the delays in meeting withdrawal requests to investors by blaming various and unexpected difficulties with purported bank and cryptocurrency transfers. For example:

a. On or about October 12, 2026, WILLIAMS emailed a GP of Backward Hat with a proposed email to send to investors. The proposed email stated: "As of July, the standard processing time for all distributions is 15-25 business days. This updated window reflects recent changes in international requirements, internal processes, and allows a buffer for the review policies that many banks now apply to incoming transfers." Based on my review of the Backward Hat website and offering materials, I know that the previous processing time had been "10-15 business days."

b. On or about October 19, 2026, a GP who "stepped in to coordinate" Backward Hat's communications sent an email to all Backward Hat GPs and explained that the delay in processing withdrawals was due to "a transition" in "prime-broker arrangements," which "slowed how quickly we could liquidate positions and receive funds back." The email further stated that "[l]iquidity continues to arrive in increments rather than through one larger release, which has contributed to significant delays."

c. On or about November 13, 2026, WILLIAMS emailed investors that the cause of the delays was related to higher-than-usual withdrawal volume that "triggered additional verification checks by a third-party identity validator."

26. Based on my review of text messages sent by WILLIAMS, however, I know that at the same time WILLIAMS was blaming banking and cryptocurrency platforms for the delays, he was, in actuality, trying to find an independent source of funding to cover the investor withdrawals. This was necessary because Backward Hat had not invested investor funds as it had represented, and, by the summer of 2026, had dissipated most investor assets.

Backward Hat Is Continuing to Raise New Money from Investors as of November 2026

27. Based on communications I have had with other law enforcement officers, I have learned that on or about October 6, 2026, an undercover employee with the Internal Revenue Service, Criminal Investigations ("UC-1") emailed the general investor email address associated with Backward Hat and posed as a prospective investor interested in investing with Backward Hat. UC-1 received a response email on or about October 20, 2026, which stated that "[w]e are accepting new investors at the moment." In addition, based on my review of an email sent on or about November 6, 2026, to a Backward Hat investor, I know that Backward Hat directed the investor that: "If you sent a contribution recently and don't see it yet, please reply with the date, amount, and sending bank so we can match it quickly." Based on these emails, I believe that Backward Hat was continuing to raise new investor funds as of the date of this Complaint, which funds may be used to fulfill withdrawal requests for existing investors.

WHEREFORE, I respectfully request that warrants be issued for the arrest of PHILLIP PATRICK WILLIAMS and DEVIN ALLEN JOHNSON, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

/s/ Robert Fanesi (by GS w/ permission)
Robert Fanesi
Special Agent
Homeland Security Investigations

Sworn to me through the transmission of
this Complaint by reliable electronic means (telephone),
pursuant to Federal Rule of Criminal Procedure 4.1,
this 17th day of November, 2026.



THE HONORABLE GARY STEIN
United States Magistrate Judge
Southern District of New York